UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANTOS J. CASTILLO-MEJIA,

    Petitioner,

-vs-                                      Case No. 8:07-CV-1585-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se,* initiated this action by filing a Petition for Writ of Habeas Corpus (hereinafter "petition") pursuant to 28 U.S.C. § 2254 (Dkt. 1), and a memorandum of law in support of the petition (Dkt. 2). Petitioner challenges his 2005 convictions for sexual battery on a child under twelve years of age and lewd and lascivious battery on a child under sixteen years of age entered by the Twelfth Judicial Circuit Court, Manatee County, Florida. Respondent has filed a response to the petition (Dkt. 11), and Petitioner has filed a reply thereto (Dkt. 14). The matter is now before the Court for consideration on the merits.

A recitation of the procedural history of Petitioner's criminal convictions is not necessary to the resolution of his habeas claim because Respondent does not dispute the timeliness of the petition or assert that the claim is not exhausted in state court. Furthermore, an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2009).

**Standard of Review**

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be

highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Discussion

Petitioner complains that his statements to the police were obtained in violation of his right against self-incrimination under the Fifth and Sixth Amendments because his *Miranda*[1] waiver was not voluntary, knowing, and intelligent. He asserts that the state trial court erred in failing to grant his motion to suppress statements he made to Sgt. Magria. In his motion to suppress, Petitioner asserted that he speaks Spanish, and is of limited intelligence having only a limited education growing up in Honduras, and he could only read poorly in Spanish (Dkt. 13, Ex. 1, Vol. 1 at R.14-16). Petitioner asserted Sgt. Magria told him to sign a waiver of rights form without explaining the rights to Petitioner in a manner in which he could understand those rights (Id.). Finally, he asserted that Sgt. Magria was threatening to Petitioner and told him that he could only get out of jail if he admitted to the allegations (Id.).

A defendant's waiver of his constitutional rights is valid if it is voluntary, knowing, and intelligent. *Miranda*, 384 U.S. at 444 (1966). *In Moran v. Burbine*, 475 U.S. 412 (1986), the

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966). Under *Miranda*, "a suspect must be apprised of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct custodial interrogation." *Texas v. Cobb*, 532 U.S. 162, 171 (2001) (citing *Miranda*, 384 U.S. at 479).

2

Supreme Court explained the two-part inquiry into whether a defendant's waiver of *Miranda* rights was voluntary, knowing, and intelligent.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707 (1979)) (citations omitted). In conducting the "totality of the circumstances" test, a court should consider factors such as: police coercion; length of interrogation; location of interrogation; continuity of interrogation; the suspect's maturity; the suspect's education; the suspect's physical condition and mental health; and whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

Whether Petitioner understood his *Miranda* rights is a factual determination subject to the presumption of correctness. 28 U.S.C. 2254(e)(1); *Mincey v. Head*, 206 F.3d 1106, 1131 (11th Cir. 2000). His competence to waive his rights is also a factual determination entitled to the presumption of correctness. *See Demosthenes v. Baal*, 495 U.S. 731, 734-35 (1990) (holding state court's determination that petitioner was competent to knowingly and intelligently waive his rights was factual, and therefore presumed correct under habeas statute). Whether Petitioner knowingly and intelligently waived his rights to the presence of counsel and to remain silent, and, if so, whether his subsequent admissions to the police were voluntary are questions of law. *Id.* On collateral review, the burden of proving involuntariness rests with the habeas petitioner. *Martin v. Wainwright*, 770 F.2d 918, 925 (11th Cir. 1985); *see also Alvord v. Wainwright*, 731 F.2d 1486, 1488 (11th Cir. 1984)(a habeas corpus petitioner has the burden of proving by a preponderance of the evidence that

he is entitled to relief). The petitioner must prove that in light of "the totality of the circumstances surrounding the interrogation" *Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979), "his will has been overborne and his capacity for self-determination critically impaired," *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). A written waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

The state court conducted a pre-trial hearing on Petitioner's motion to suppress (Dkt. 13, Ex. 1, Vol. I at R. 91-151). The record confirms that Petitioner was afforded a full and fair opportunity to develop the factual basis for his claim in the state trial court.

During the hearing, Sgt. Magria testified that he was employed by the Manatee County Sheriff's Department and assigned to the Crimes Against Children Unit. He speaks both English and Spanish. On January 4, 2005, he observed Petitioner being arrested. Petitioner was then taken to the Palmetto Criminal Investigation Division ("PCID"). Sgt. Magria spoke with Petitioner in the conference room at PCID. No one else was present when they spoke. Sgt. Magria spoke to Petitioner in Spanish. Sgt. Magria apprised Petitioner of his *Miranda* rights by going over a *Miranda* rights waiver form ("*Miranda* form") with him. The *Miranda* form was in Spanish. Sgt. Magria asked Petitioner if he could read Spanish, and Petitioner said that he could. Sgt. Magria had Petitioner read the form aloud, and he went over it with him line by line. After Petitioner read each line, Sgt. Magria asked Petitioner whether he understood what the line said, or whether he needed Sgt. Magria to explain it. Petitioner responded that he understood each line, and he placed a check mark by each line indicating that he understood what the line meant. When Petitioner finished reviewing the *Miranda* form, he signed it. Sgt. Magria never told Petitioner that if he did not sign

4

the form that he would go to prison for life. Nor did he tell Petitioner that if he signed the form he could get out of jail quickly. Sgt. Magria did not explain the rights on the *Miranda* form to Petitioner because Petitioner indicated that he understood everything on the *Miranda* form. Sgt. Magria's interview of Petitioner was recorded. (Id. at R. 113-22).

Petitioner testified that he grew up in Honduras and went to school there for five or six years.[2] He came to the United States when he was 15, 16, or 17, and he had resided in the United States for 3½ to 5 years. He worked in the United States with concrete. He stated that at the time he was interviewed by Sgt. Magria, he could read a little Spanish. He said that he signed the *Miranda* form because Sgt. Magria "just told me just sign over there." He did not, however, understand what the *Miranda* form meant. No one ever explained to Petitioner the rights contained on the *Miranda* form. Petitioner testified that Sgt. Magria told him that if he signed the *Miranda* form that he would get out of jail quickly, but if he did not sign the form he would go to jail for the rest of his life. Petitioner told Sgt. Magria that he had sex with the girl because Sgt. Magria told him to say that and that everything was "going to come out right."

Prior to this arrest, Petitioner had been arrested on another charge. Petitioner entered a plea in that case. After Petitioner was arrested in the instant case, he took a Bible correspondence course at the jail which was taught in Spanish. In the class, he wrote answers in Spanish, and he received a grade of "84." (Id. at R. 133-47).

During the hearing, Dr. Lazaro Garcia, a licensed psychologist, testified on behalf of the Petitioner. Dr. Garcia examined and tested Petitioner. Petitioner took an IQ test on which he scored a 65 which would normally warrant a diagnosis of mild mental retardation. Dr. Garcia, however, did

---

[2]An interpreter was utilized during the hearing to translate.

not find Petitioner to be mentally retarded because other factors likely lowered the IQ score, and Dr. Garcia believed the IQ score underestimated Petitioner's intellectual capacity. Dr. Garcia had Petitioner read the *Miranda* form in Spanish, and Petitioner had significant difficulties reading the form. He also found Petitioner had great difficulty with reading comprehension and putting sentences together. When Dr. Garcia read and explained the *Miranda* form to Petitioner, Petitioner said he understood it. However, Petitioner told Dr. Garcia that at the time Sgt. Magria read the *Miranda* form to him, he did not understand it because it was not explained to him. Dr. Garcia testified that Petitioner had the capacity to understand the *Miranda* rights if they were explained to him slowly and carefully, but would not likely understand the rights if they were not explained to him. Dr. Garcia testified that Petitioner can speak and converse in Spanish fluently, and that his social skills are not indicative of retardation.

After hearing the testimony of the witnesses, reviewing the transcript of the audio tape of Petitioner's statements to Sgt. Magria, and hearing argument by counsel, the trial court denied the motion to suppress and found:

> I find that *Miranda* warnings were properly given to the defendant. Testimony of the detective is that he read, that is the defendant read the *Miranda* warnings out loud, he was asked by the detective whether he understood what he was reading, he replied that he did, he checked the boxes. I find that the defendant is literate to the extent that he is capable of reading the Spanish language, and upon being asked pointedly whether or not he understood the warnings, he relied [sic] that he did.
>
> The transcript of the tape reveals that the detective also asked the defendant at that time if he remembered having the *Miranda* warnings provided, the defendant said yes, and when the detective asked if he understood those warnings the defendant again replied yes. So I'll make those factual findings.

(Id. at R. 150-51).

First, to the extent Petitioner asserts that the waiver of his *Miranda* rights was coerced by promises of leniency if he signed the *Miranda* form, and threats of life imprisonment if he refused to sign the form, this Court finds the waiver was not coerced.[3] Sgt. Magria testified at the suppression hearing that he never told Petitioner that if he did not sign the form he would go to prison for life, and he never told Petitioner that if he signed the form he could get out of jail quickly (Dkt. 13, Ex. 1, Vol. 1 at R. 119).

Further, in considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). State court findings of fact subsidiary to the issue of voluntariness are entitled to a presumption of correctness where such findings are not patently erroneous or otherwise deficient. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Moreover, implicit findings of fact are entitled to deference under § 2254(e) to the same extent as explicit findings of fact. *See Mathis v. Zant*, 975 F.2d 1493, 1495 (11th Cir. 1992); *Cunningham v. Zant*, 928 F.2d 1006, 1011 (11th Cir. 1991). Although the trial court did not specifically find that no promises of leniency or threats had been made by Sgt. Magria, by denying Petitioner's motion to suppress, the trial court implicitly found that no promises of leniency or threats had been made to induce Petitioner's statement.[4] Petitioner does not rebut by clear and

---

[3]The state court did not specifically state that the waiver was not coerced. However, if a state trial court made no explicit findings of fact, this Court may discern the evidence that was available to the state court and determine whether the application of the voluntariness standard was reasonable. *See Blankenship v. Hall*, 542 F.3d 1253, 1272 n.5 (11th Cir. 2008).

[4]During trial, the trial court instructed the jury that in making its determination whether Petitioner's statement to Sgt. Magria was knowingly, voluntarily, and freely made, the jury should consider the total circumstances including "whether anyone had promised him anything in order to get him to make it." (Dkt. 13, Ex. 1, Vol. IV at R. 376-77).

convincing evidence the trial court's implicit finding that no promises of leniency or threats had been made by Sgt. Magria.

Second, Petitioner does not meet his burden of showing that the waiver of his rights was not voluntary, knowing, and intelligent. Petitioner asserts that in the absence of an explanation of the *Miranda* waiver form, he was unable to understand it because of his limited education and IQ of 65. However, mental deficiencies or below average I.Q. of a defendant, by themselves, are not sufficient to render a confession involuntary. To establish that his confession was involuntary, a petitioner must also establish police coercion. *Moore v. Dugger*, 856 F.2d 129, 132 (11th Cir. 1988) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-166 (1986)). Therefore, because, as determined *supra*, there was no police coercion, Petitioner cannot establish that his waiver was involuntary.

A valid waiver, however, requires more than just a finding of voluntariness. A waiver of *Miranda* rights must also be knowing and intelligent. For a waiver to be knowing and intelligent, it must have been made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. "[T]he totality of the circumstances surrounding the interrogation" must demonstrate a defendant waived his rights with a "requisite level of comprehension." *Id.*

Petitioner does not dispute Sgt. Magria's testimony during the motion to suppress hearing that he gave Petitioner a *Miranda* form that was printed in Spanish. Nor does he dispute Sgt. Magria's testimony that Petitioner read the *Miranda* form out loud, that Sgt. Magria asked Petitioner if he understood each line that he read, and that Petitioner verbally indicated that he understood. Finally, he does not contest Sgt. Magria's testimony that Petitioner initialed each paragraph indicating that he understood his rights, and signed the *Miranda* form. This undisputed testimony

is strong proof that Petitioner's waiver of his rights was knowing and intelligent. *See United States v. Guerrero*, 296 Fed. Appx. 764 (11th Cir. 2008) (unpublished opinion) (finding that district court properly concluded that Spanish speaking defendant's waiver of his rights was knowing and intelligent where officers gave defendant a copy of *Miranda* rights waiver form printed in Spanish, read the form to defendant, asked defendant if he understood, defendant initialed each paragraph indicating that he understood, and defendant signed the form) (citing *United States v. Boon San Chong*, 829 F.2d 1572 (11th Cir. 1987)).

Further, although Dr. Garcia testified that Petitioner's IQ score would normally warrant a diagnosis of mild mental retardation, he did not find Petitioner to be mentally retarded because other factors likely lowered the IQ score. Dr. Garcia concluded that Petitioner's IQ score underestimated his intellectual capacity (Dkt. 13, Ex. 1, Vol. I at R. 101). Although Dr. Garcia testified that he believed Petitioner had the capacity to understand the *Miranda* form only if it was "explained to him slowly and carefully..." (Id. at R. 106), Sgt. Magria testified that he did not explain the form to Petitioner because "he didn't require any further elaboration, he understood everything." (Id. at R. 121). Notwithstanding Dr. Garcia's opinions, the record gives no indication that at the time Petitioner read the *Miranda* form to Sgt. Magria, Petitioner appeared confused or indicated that he did not understand his rights.

Moreover, Petitioner's capacity to understand the *Miranda* form is bolstered by 1) his approximate six years of education in Honduras; 2) his residency in the United States for approximately 5 years prior to the interrogation; 3) the fact that he keeps a Bible written in Spanish and other religious writings in his cell to read; 4) the fact that after he was arrested, he took a Bible correspondence class in jail in which he achieved a final grade of 84; and 5) the fact that he had

previous experience with the justice system[5] (Id. at R. 137-47).

Finally, Petitioner's claim that the text of the *Miranda* form was insufficient to support a knowing and intelligent waiver because the form did not adequately inform him that he had the right to speak to an attorney even if he could not afford one is without merit. At trial, the State presented the testimony of Joanne Stivers ("Stivers"), a Spanish interpreter and translator (Dkt. 13, Ex. 1, Vol. III at pg. 308). Stivers translated into English the Spanish *Miranda* form that Petitioner read and signed. Stivers translated the *Miranda* form, in pertinent part, as follows:

> If you wish that an attorney be present during the interrogation in this moment or here any time ahead, you have the right to have an attorney present. Do you understand this right; yes, no?
>
> If you cannot pay an attorney, one will be foreseen for you without cost to you if you wish one. Do you understand this right?

(Id. at pg. 312).

Petitioner argues that Stivers' translation of the form at trial that "[i]f you cannot pay an attorney, one will be foreseen for you without cost to you if you wish one" demonstrates that the form did not clearly and sufficiently inform him that he had a right to speak to an attorney even if he could not afford one (Dkt. 2 at pg. 12). Respondent argues that Petitioner "does not show it is objectively unreasonable to determine the interpreter merely misspoke when testifying at trial" and "does not show the actual <u>Miranda</u> form executed by him was incorrect or incomplete in any material regard..." (Dkt. 11 at pg. 14). During the hearing on Petitioner's motion to suppress, Stivers also translated the *Miranda* form Petitioner read and signed (Dkt. 13, Ex. 1, Vol. I at R. 125). During that

---

[5] *See United States v. Glover*, 431 F.3d 744 (11th Cir. 2005) (knowing, voluntary waiver where the government presented evidence the defendant interacted normally and intelligently with the arresting agents and was familiar with the criminal justice system); *Henyard v. McDonough*, 459 F.3d 1217, 1241 (11th Cir. 2006)(defendant's previous experience with the justice system supported knowing and intelligent waiver).

10

hearing, Stivers testified that the *Miranda* form stated in pertinent part that "[i]f you cannot pay an attorney, one will be provided without cost to you if you want one." (Id.). Thus, the Court agrees with Respondent that, based on the record, Petitioner "does not show the actual Miranda form executed by him was incorrect or incomplete in any material regard..."

Finally, Petitioner's statements to the police did not affect the outcome of his trial. A petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quotation omitted). "To show prejudice under *Brecht*, there must be 'more than a reasonable possibility that the error contributed to the [conviction or] sentence.'" *Mason v. Allen*, 605 F.3d 1114 (11th Cir. 2010) (quoting *Horsley v. State of Ala.*, 45 F.3d 1486, 1493 (11th Cir. 1995). The harmless error rule is applicable to evidence admitted in violation of *Miranda*. *United States v. Street*, 472 F.3d 1298, 1314-15 (11th Cir. 2006).

The evidence at trial included testimony from the victim that she was 11 years old when Petitioner first came through her bedroom window and had sex with her (Dkt. 13, Ex. 1, Vol. III at pg. 232).[6] She also testified that she turned 12 years old on June 29, 2004, and that she and Petitioner began having sex before she had her spring vacation from school in 2004 (Id. at pgs. 233-34). She further testified that she and Petitioner had sex at his house both before and after her 12th birthday (Id. at pg. 234).

During the recorded interview, Sgt. Magria asked Petitioner "[a]nd when it [sic] was, and when it [sic] was the first time that you had relations with her sexually?" (Dkt. 13, Ex. 1, Vol. III

---

[6]The Court notes that at trial, Petitioner's counsel did not dispute that Petitioner had sex with the victim. Instead, Petitioner's defense was that he did not have sex with the victim before she turned 12 years old.

11

at pg. 318). Petitioner answered "[w]ell, as she says, when she was going to have, when she was going to have a birthday then." (Id.). Sgt. Magria then asked "[i]n which year? The 12th, before she turned 12?" (Id.). Petitioner responded "[t]he 12th, then it was, it was the first time that I was with her." (Id.). Thus, although Petitioner's statements appear to indicate that he had sexual relations with the victim before her 12th birthday, he did not clearly state that he had sexual relations with the victim when she was 11. During closing arguments, defense counsel argued that Petitioner's statement to Sgt. Magria was "not a statement that clearly says there was sexual activity going on before the 12th birthday" (Id. at Vol. IV, pg. 433), and "not particularly clear." (Id. at pg. 438).

Even without Petitioner's statement, there was sufficient evidence to support the conviction. The Court cannot say that even if it was error to admit Petitioner's statements at trial, that there was "more than a reasonable possibility that the error contributed to the [conviction]." *Horsley*, 45 F.3d at 1493.

In sum, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). Based on the record before the state court, this Court concludes that the state court's determination that Petitioner voluntarily, knowingly, and intelligently waived his *Miranda* rights prior to giving his statement is not objectively unreasonable. Given the totality of the circumstances, Petitioner has not carried his burden to show that Petitioner's statement was involuntary or resulted from police coercion. Moreover, Petitioner has failed to show that any constitutional error contributed to his conviction. Thus, the state trial court's denial of the motion to suppress his statement did not result in a decision that was contrary to, or involved an unreasonable application

of, clearly established Supreme Court law, nor result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, this 19th day of July, 2010.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
Counsel of Record